IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LLOYDENE HILL,                    )    Civil No. 07-1041-JE
                                  )
            Plaintiff,            )    FINDINGS AND
                                  )    RECOMMENDATION
      v.                          )
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
            Defendant.            )
_____ )

> Tim Wilborn
> 19093 S. Beavercreek Road, PMB #314
> Oregon City, OR 97045
>        Attorney for Plaintiff
>
> Karin J. Immergut
> U.S. Attorney
> Britannia I. Hobbs
> Asst. U.S. Attorney
> 1000 S.W. Third Avenue, Suite 600
> Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Daphne Banay
Special  Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
        Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Lloydene Hill brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of a decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security disability insurance benefits.  Plaintiff seeks an Order remanding this action to the Social Security Administration (the Agency) for an award of benefits.  The Commissioner concedes that the Administrative Law Judge made substantial errors in evaluating plaintiff's claim, and seeks an Order remanding the action to the Agency for further proceedings.

For the reasons set out below, the Commissioner's motion to remand for further proceedings should be denied, and this action should be remanded for an award of benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on June 12, 2003, alleging that she had been disabled since October 25, 2002, because of Hepatitis C, Fibromyalgia, Osteoarthritis, and Neuropathy.  After plaintiff's application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Following a hearing before him, on July 12, 2005, ALJ Charles Evans issued a decision finding that plaintiff was not disabled.  Plaintiff requested review of that decision by the Appeals Council, which remanded the action to the ALJ for a new hearing on March 16, 2006.  The Appeals Council instructed  the ALJ, on remand, to obtain new

FINDINGS AND RECOMMENDATION - 2

evidence concerning plaintiff's physical and mental condition, further evaluate plaintiff's subjective complaints, re-evaluate plaintiff's residual functional capacity, obtain additional testimony from a Vocational Expert (VE), provide plaintiff with the opportunity for a new hearing, and take any additional steps necessary to complete the administrative record.

Following remand, a hearing was held before ALJ Ralph Jones on October 26, 2006. In a decision issued on December 5, 2006, ALJ Jones found that plaintiff was not disabled. That decision became the final decision of the Commissioner on May 14, 2007, when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff seeks review of that decision.

## FACTUAL BACKGROUND

Plaintiff was born on November 20, 1958, and was 48 years old at the time of the most recent decision finding that she was not disabled. She served in the United States Air Force for approximately 9 months in 1979, during which time she apparently contracted Hepatitis C as a result of needle sticks she sustained while working as a medical services specialist. Plaintiff was honorably discharged, and was granted a 100% service-related disability award in 2003, which was retroactive to July 15, 2002. In 1999, plaintiff received a Bachelor of Arts degree from Marylhurst University. She has also completed paralegal training. Plaintiff has past relevant work experience as a litigation specialist, instructor in a private vocational school, paralegal, customer service manager, customer service administrative assistant, heavy equipment operator, and truck driver.

**MEDICAL RECORD**

Plaintiff's extensive medical history is accurately set out in plaintiff's memoranda, and will be summarized only briefly here.

At the request of Dr. John Gilligan, one of plaintiff's treating physicians, Dr. Gary Ward evaluated plaintiff on April 18, 2002. Dr. Ward noted that plaintiff had been injured while working as a heavy equipment operator in November, 1989, and had been off work for approximately 18 months because of the injuries she had sustained. He noted that plaintiff had been injured in a motor vehicle accident in May, 2002, had experienced pain in her back, neck, and right hip since that time, and had improved "only modestly" since the accident. Dr. Ward further noted that plaintiff's records and x-rays showed moderate straightening of the cervical curve, anterolisthesis at C3 upon flexion, retrolisthesis at C4 upon extension, and minimal left cervicothoracic curvature with functional hypomobility upon flexion and extension between C1-1, C2-3, C5-6, and C-7. Dr. Ward observed that plaintiff had been previously diagnosed with fibromyalgia, and that plaintiff reported constant pain in the posterior cervical, upper thoracic area.

In December, 2002, Dr. Ward reported that plaintiff continued to experience pain, fatigue, and lack of coordination in her lower extremities. On February 28, 2003, he noted that plaintiff was receiving psychological treatment from Dr. Olson to help manage her continued pain, and that a rheumatologist had diagnosed plaintiff with fibromyalgia. He also noted that plaintiff had been injured by her husband during a domestic dispute.

At the request of Dr. Gilligan, an MRI of plaintiff's brain was taken on May 27, 2003. That examination revealed multiple small white matter regions of abnormality, which the

radiology report noted could indicate "ischemic/gliotic change, demyleminating disease, vasculitis, autoimmune disorder, or a patient with migraines."

At Dr. Gilligan's request, plaintiff was also examined by Dr. Todd Devere. Dr. Devere noted that plaintiff experienced fluctuating paresthesias and numbness involving her upper and lower extremities, as well as fatigue, pain, and sleeping difficulties.

A Veterans Administration Decision dated July 19, 2003, indicated that plaintiff had been granted a 40% disability based upon injuries and degenerative changes in her feet. The decision stated that these conditions caused "increased pain, fatigue, flare-ups with repetitive motions and prolonged use, decreased endurance, weakness, callosities, and lack of strength in the feet."

In a mental status report dated August 5, 2003, Dr. Kern Olson indicated that he had seen plaintiff once or twice per month since February, 2003. Dr. Olson reported that plaintiff experienced significant chronic pain from Fibromyalgia, Hepatitis C, Neuropathy, and Osteoarthritis. He opined that, with assistance, plaintiff could perform daily activities such as cleaning, shopping, and cooking, and noted that plaintiff had been diagnosed with Depression/Anxiety and Dysthymia. Dr. Olson indicated that plaintiff was "distractible," and stated that "pain prevents patient from competitive job market."

In a form dated August 23, 2003, Dr. Gilligan stated that plaintiff was incapacitated by a permanent or long term condition. In a letter dated September 4, 2003, he stated that plaintiff suffered from Hepatitis C, Fibromyalgia, Osteoarthritis, and Small Fiber Polyneuropathy, and that she was taking Methadone and Neurontin for relief from pain and paresthesias. Dr. Gilligan added that, though plaintiff had been diagnosed with Hepatitis C

FINDINGS AND RECOMMENDATION - 5

in 1998, she was thought to have contracted the disease while she was in the Air Force.

Dr. Gilligan reported that plaintiff had been treated with Interferon in 1998, but did not

complete the treatment because of side effects.  He opined that, given the extent of her

disease pathology and its progression, and the side effects of her medications, it was

"doubtful, if not unlikely that she will be able to work again."

Plaintiff received counseling from Leslie Bagon, a Licensed Clinical Social Worker,

between May and October, 2003.  On May 30, 2003, Ms. Bagon rated plaintiff's Global

Assessment of Functioning (GAF) score as 58.  In a letter dated October 16, 2003, she stated

that plaintiff was diagnosed with Anxiety Disorder NOS, with symptoms of both depression

and anxiety.

Beginning in June, 2003, plaintiff was treated at the Veterans Administration Medical

Center in Portland, Oregon.  X-rays taken on June 6, 2003, indicated degenerative changes

and evidence of old trauma in plaintiff's feet.

Plaintiff was examined by Dr. Allen Doyle on August 29, 2003.  Dr. Doyle noted

that plaintiff had been diagnosed with Hepatitis C, that a liver biopsy had shown active

Hepatitis C activity and inflammation, and that Interferon therapy had failed.  Dr. Doyle

stated that plaintiff had "more probably than not contracted" Hepatitis through needle

contacts while she was in the Air Force, and opined that Hepatitis was "more probably than

not causing her chronic pain syndrome, which is pretty much incapacitating or requiring

methadone, 160 mg a day, and essentially making her unemployable."  Dr. Doyle added that

he did not think that plaintiff suffered from "fibromyalgia secondary to the Hepatitis C," but

did think that she "has some extra-hepatic manifestations of Hepatitis C including the

generalized achiness of chronic pain syndrome as well as fatigue . . . ."  He opined that plaintiff was "not capable of full time employment" because of chronic pain and fatigue.

Karen Inaba, a VA psychiatric nurse practitioner, began counseling plaintiff on February 12, 2004.  In her intake report, Ms. Inaba noted that plaintiff had a history of having been sexually abused, and opined that her affect appeared "overwhelmed, depressed, and anxious about her many family difficulties and chronic pain."  A chart note dated November 29, 2004, indicted that plaintiff had scored in the "severe" range of depressive symptoms on a Beck Depression Inventory.  In a note dated December 15, 2004, Ms. Inaba opined that plaintiff suffered from chronic Hepatitis C with severe fatigue and chronic arthritis in her knees, back, hip, legs, and feet.  She stated that, because of mobility problems, plaintiff needed a parking spot close to her apartment.  In a note dated January 14, 2005, Ms. Inaba opined that plaintiff had dysthymic disorder, marital problems, cluster borderline personality disorder, and possible post traumatic stress disorder related to sexual abuse she had experienced as a child and while in the Air Force.

Ms. Inaba referred plaintiff to the VA's Women's Mental Health Program, and plaintiff attended Trauma Symptom Management Classes through that program.  A VA treatment note dated January 21, 2005, indicated that plaintiff had been granted 100% service connected disability based upon her Hepatitis C, a 40% disability based upon fibromyalgia, and a 20% disability based upon traumatic arthritis.  In a note dated March 3, 2005, Ms. Inaba stated that plaintiff suffered from a Dysthymic disorder and a Cluster B personality disorder, and listed PTSD related to sexual abuse as a "rule out" diagnosis.

FINDINGS AND RECOMMENDATION - 7

A test conducted on March 15, 2005, indicated that plaintiff's liver function was normal, but that she had a high viral load.

Dr. Constance Jackson, a VA psychiatric resident, evaluated plaintiff on July 21, 2005.  Dr. Jackson noted that plaintiff had been diagnosed with Dysthymia and Cluster B personality traits, and listed major depression and PTSD as "rule out" diagnoses.  She assessed plaintiff's GAF as 65.

Dr. Robert Socherman, a clinical psychologist, examined plaintiff on November 23, 2005, and counseled plaintiff during a number of sessions.  In a letter dated May 3, 2006, Dr. Socherman opined that plaintiff suffered from PTSD.  Dr. Socherman characterized PTSD as a "severe mental health disorder," and opined that it had "caused significant impediments to her ability to acquire and maintain gainful employment."  Dr. Socherman also completed a Psychiatric Review Technique form for plaintiff.  He indicated that plaintiff had a listing 12.04 affective disorder, which was evidenced by anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and thoughts of homicide.  Dr. Socherman also indicated that plaintiff had a listing 12.06 anxiety-related disorder that was evidenced by generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation and vigilance and scanning; a persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; and recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

FINDINGS AND RECOMMENDATION - 8

In addressing the functional Paragraph B criteria, Dr. Socherman opined that plaintiff had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. He also opined that plaintiff had experienced four or more episodes of decompensation of extended duration.

In his assessment of plaintiff's mental residual function capacity (RFC), Dr. Socherman opined that plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from superiors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. Dr. Socherman opined that plaintiff was moderately limited in her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, interact appropriately with the general public, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.

At the request of the Commissioner, plaintiff was examined by Dr. Stephen Meharg on August 7, 2006. Dr. Meharg reported that plaintiff displayed a "persistent edge of cynicism" and "appeared mildly irritated and was consistently sarcastic about what she perceives to be persistent attempts to dismiss her concerns by those in authority." He also reported that plaintiff's scores on the Test of Memory Malingering and the Lees Haley Fake Bad Scale suggested malingering. He noted that these findings did not imply that plaintiff does not suffer from a psychiatric disorder or that all her symptoms were feigned, and accepted that she "has likely been chronically depressed in the form of dysthymic disorder and that her condition may worsen at times to the point of major depression associated with acute fluctuations in psychosocial stressors." Dr. Meharg diagnosed plaintiff with Malingering; Major Depressive Disorder, recurrent, overlaid on chronic Dysthymia; Opioid Dependence; Pain Disorder associated with both psychological factors and a general medical condition; Partner Relationship Problem, and Personality Disorder, NOS. He rated plaintiff's GAR at 55.

In the Medical Source Statement that he completed, Dr. Meharg opined that plaintiff would be moderately limited in her ability to interact appropriately with supervisors and coworkers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. He also opined that plaintiff's "depression, irritability, and personality disorder would be expected to produce moderate impairment in some areas, especially with those in authority."

In a letter dated October 18, 2006, Dr. Socherman reitierated his "clinical impression that Lloydene Hill suffers from a severe mental health disorder (PTSD) which has caused

significant impediments to her ability to acquire and maintain gainful employment." He added that "it has been difficult for Ms. Hill to find work that does not negatively impact either her mental health or her physical health . . . ."

## VOCATIONAL EXPERT TESTIMONY

During plaintiff's hearing following remand, the ALJ asked the Vocational Expert (VE) to consider an individual of plaintiff's age, education, and experience, who "could perform at a light residual functional capacity, occasionally lifting 20 pounds, frequently 10, sitting, standing and walking each approximately six hours of an eight hour day, pushing and pulling unlimited commensurate, and no other physical limitations. No assessment of any mental limitations." The VE testified that such an individual could perform most of plaintiff's past relevant work.

Plaintiff's former counsel asked the VE to assume, in addition to the limitations set out by the ALJ, the moderate impairments assessed by Dr. Meharg in plaintiff's ability to interact appropriately with supervisors and coworkers, to respond appropriately to work pressures in a usual work setting, and to respond appropriately to changes in a routine work setting. The VE responded that, in his opinion, these limitations "would preclude the ability to work . . . at that level, a professional work on any kind of consistent basis. It would . . . I think . . . preclude work in a competitive work environment, and certainly in those capacities." When asked if those limitations would collectively preclude "sustained gainful employment," the VE replied, "I believe so, yes." The VE testified that the marked limitations assessed by Dr. Socherman would also preclude sustained gainful employment.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One</u>.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

<u>Step Two</u>.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

<u>Step Four</u>.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R.

§ 404.1520(e). Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## ALJ'S DECISION

At the first step of the disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on October 25, 2002.

At the second step, the ALJ found that plaintiff's Hepatitis C, chronic pain syndrome, obesity, and bilateral foot pain were "severe" impairments within the meaning of 20 C.F.R.§ 404.1520(c).  He concluded that plaintiff did not have any severe mental impairments.

At the third step, the ALJ found that plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At the fourth step, the ALJ found that plaintiff had the residual functional capacity (RFC) required to perform "light exertional level physical activities, lifting and carrying 20 pounds occasionally, and 10 pounds frequently."  Based upon the testimony of the VE, the ALJ found that plaintiff could perform her past work as a litigation specialist, paralegal, administrative assistant, customer service manager, and office clerk.  Accordingly, he found that plaintiff was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if

"the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

## DISCUSSION

Plaintiff contends that the ALJ erred in failing to find that plaintiff's mental impairments, including depression, a personality disorder, and PTSD, were severe, in failing to include all of plaintiff's limitations in the assessment of plaintiff's Residual Functional Capacity and in the hypothetical posed to the ALJ, in failing to give the appropriate weight to the VA determination that plaintiff is disabled, in improperly rejecting the opinions of treating and examining doctors; in improperly rejecting lay witness statements, and in posing an invalid hypothetical. Plaintiff argues that the evidence that the ALJ improperly rejected should be credited, and that the action should be remanded to the Agency for an award of benefits.

The Commissioner concedes that the ALJ did not adequately evaluate plaintiff's mental impairments, the statements of lay witnesses, plaintiff's residual functional capacity and subjective complaints, the opinions of treating and examining doctors and other medical sources, the VA's conclusion that plaintiff is 100% disabled, and plaintiff's ability to perform her past relevant work. The Commissioner contends that further evaluation is required to determine whether plaintiff is disabled, and moves for a remand for that purpose.

Based upon a careful review of the relevant portions of voluminous administrative record, and the parties' memoranda, I conclude that further proceedings are unnecessary, and that the action should be remanded for an award of benefits.

1. Failure to Find Plaintiff's Mental Impairments are "Severe," and Failure to include all of Plaintiff's Limitations in RFC Assessment

As noted above, Dr. Socherman, plaintiff's treating psychiatrist, diagnosed plaintiff with PTSD, which he opined caused severe anxiety, significant difficulty interacting with authority figures, and "significant impediments in her ability to acquire and maintain gainful employment."  He also completed a medical Source Statement in which he opined that plaintiff would have moderate to marked limitations in a number of areas related to occupational functioning.  Dr. Jackson, one of plaintiff's treating doctors, diagnosed Dysthymia and Cluster B personality traits, and Ms. Inaba, a psychiatric nurse practitioner, opined that plaintiff had dysthymic disorder, cluster borderline personality disorder, and possible PTSD related to sexual abuse.  Despite his diagnosis of malingering, Dr. Meharg, an examining psychiatrist, opined that plaintiff suffered from severe mental disorders that would affect her ability to work.  Dr. Meharg opined that plaintiff suffered from Major Depressive Disorder, recurrent, overlaid on chronic Dysthymia, a pain disorder associated with psychological factors and a general medical condition, and a Personality Disorder, NOS.  He opined that plaintiff was moderately limited in several ways that would affect her ability to perform basic work activities.  As noted above, the VE testified that an individual with the limitations Dr. Meharg assessed would not be able to perform substantial gainful employment.

In determining that plaintiff's mental impairments were not severe, the ALJ stated that he was relying on the results of Dr. Meharg's evaluation.  However, though the ALJ discussed Dr. Meharg's diagnosis of malingering, he did not address Dr. Meharg's opinion that plaintiff in fact also suffers from mental disorders that result in certain moderate

limitations, or the VE's opinion that those limitations would preclude substantial gainful employment. Though the ALJ also dismissed diagnoses of significant mental disorders made by other medical sources on the grounds that these were based upon "unfounded subjective reporting," a review of the extensive medical record does not support that conclusion. Instead, that record includes substantial objective evidence that plaintiff suffers from significant mental disorders.

An impairment that has more than a minimal effect on an individual's ability to work is "severe" within the meaning of the analysis performed at the second step of Social Security disability assessment. See SSR 85-28, Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). Here, the ALJ's conclusion that plaintiff did not suffer from mental disorders that would have more than a minimal effect on her ability to work was not only unsupported by substantial evidence, but was contrary to the overwhelming evidence to the contrary from multiple sources.

In addition to erring in failing to find that plaintiff had "severe" mental impairments, the ALJ erred in failing to include those impairments in his assessment of plaintiff's RFC and in the hypothetical he posed to the VE. In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citing Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 447 (8th Cir. 1983)). The ALJ's depiction of the claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If the assumptions in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value. Gallant, 753 F.3d at 1456.

FINDINGS AND RECOMMENDATION - 17

Here, the ALJ's hypothetical did not include limitations related to plaintiff's mental disorders that were assessed by treating and evaluating medical sources. In the absence of reference to such limitations, the VE's opinion that plaintiff could perform her past relevant work lacks evidentiary value. As noted above, the VE testified that an individual with the limitations found by Dr. Meharg, upon whom the ALJ purported to rely, could not perform substantial gainful employment.

2.  Rejection of  VA's Determination of Disability

As noted above, in a VA decision dated October 18, 2003, plaintiff was found to be 100% disabled as of July, 2002, based upon Hepatitis C and related conditions. Though the ALJ asserted that no copy of this decision was included in plaintiff's Social Security administrative record, he acknowledged that the decision was referenced in the record, and referred in his decision to the income plaintiff received based upon the VA's determination that plaintiff is disabled. In addition, plaintiff testified about this determination in the hearing before the ALJ.

In McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002), the court noted that, though a "VA rating of disability does not necessarily compel the SSA to reach an identical result . . . the ALJ must consider the VA's findings in reaching his decision." The court added that, given the "marked similarity" between Social Security and VA disability programs, an ALJ must "ordinarily give great weight to a VA determination of disability." Id.  If he does not accord such weight to a VA disability determination, the ALJ must "give persuasive, specific, valid reasons for doing so that are supported by the record."  Id.

The Commissioner now contends that this action should be remanded to the Agency in order to provide the ALJ an opportunity to review the VA's determination that plaintiff is 100% disabled. I disagree. Though there may be a question as to whether a copy of the VA determination awarding plaintiff was included in the record before the ALJ, there is no doubt that the ALJ knew about and rejected the VA's conclusion that plaintiff was disabled. If the ALJ questioned the contents of the VA's disability decision, he had an obligation to obtain a copy of the document. E.g., Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has duty to further develop record when evidence is ambiguous or inadequate to allow for proper evaluation). Instead, without providing "persuasive, specific, valid reasons" for rejecting the VA's disability determination, he simply stated that plaintiff is "clearly capable of maintaining competitive employment," and has "tailored her alleged problems to maximize service connected disability." These are not sufficient reasons for rejecting a determination that the Ninth Circuit has concluded is to be accorded "great weight."

Given the weight that is appropriate, the VA's disability determination supports the conclusion that this action should be remanded for an award of benefits. As discussed elsewhere in this Findings and Recommendation, remand for an award of benefits is appropriate for a number of other reasons as well.


3. Rejection of Opinions of Treating and Evaluating Doctors

As noted above, Dr. Socherman, plaintiff's treating psychiatrist, opined that plaintiff would have a number of marked and moderate limitations in her ability to perform work-related activities. The ALJ rejected this opinion on the grounds that it was unsupported by any objective basis, and was contradicted by Dr. Socherman's own treatment notes. The ALJ

also asserted that Dr. Socherman's opinion was not supported by objective findings and was inconsistent with treatment records and plaintiff's activities and the opinions of other treating sources.

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  Accordingly, an ALJ must support the rejection of a treating physician's opinion with "findings setting forth specific and legitimate reasons for doing so that are based upon substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's ultimate conclusions.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

As the Commissioner correctly concedes, the ALJ here did not adequately support his rejection of the opinions of Dr. Socherman or other treating or examining medical sources. The ALJ did not specify how Dr. Socherman's opinions were inconsistent with his treatment notes, and provided only vague references to other mental health treatment providers.  In rejecting the opinions of Dr. Socherman, a treating physician, about the seriousness of plaintiff's mental disorders and impairments, he relied largely on the assessment of Dr. Meharg, a psychiatrist who examined plaintiff one time.  However, even though Dr. Meharg opined that plaintiff was malingering, he found that she suffered from severe mental disorders, assessed her GAF at a level indicating moderate impairment, and opined that plaintiff would be moderately impaired in a number of areas that affected work-related activities.  The ALJ provided no basis for rejecting Dr. Meharg's opinion as to these

impairments, which, as noted above, the VE testified would preclude substantial gainful activity.

Dr. Gilligan, plaintiff's treating physician, opined that, because of her Hepatitis C, Fibromyalgia, Osteoarthritis, and Small Fiber Polyneuropathy, plaintiff would probably not work again.  The ALJ rejected this opinion on the grounds that the objective record did not demonstrate complications from Hepatitis C, there was no clear diagnosis of Fibromyalgia, and evaluations did not show that plaintiff had significant osteoarthritis.  These reasons were insufficient, given the significant evidence in the record supporting the conclusion that plaintiff's Hepatitis C caused significant symptoms, evidence showing degenerative changes in plaintiff's shoulders, and Dr. Gilligan's examinations that showed continued migratory myalgias, fatigue, and difficulty with daily activities.

Finally, Dr. Doyle, an examining physician, opined that plaintiff's Hepatitis C probably caused her chronic pain syndrome, and essentially made plaintiff unemployable. The ALJ rejected this opinion on the grounds that Dr. Doyle failed to explain why plaintiff could not work.  This was not an adequate basis for rejecting Dr. Doyle's opinion, because Dr. Doyle cited plaintiff's high viral load of Hepatitis C and opined that plaintiff's chronic fatigue and pain, and the need to take high doses of methadone to control pain, were incapacitating.

Where, as here, an ALJ does not provide sufficient reasons for rejecting the opinions of treating or examining physicians, those opinions are credited "as a matter of law."  A reviewing court then has discretion to remand for further administrative proceedings or for a finding of disability and an award of benefits.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985).

Whether an action is remanded for an award of benefits for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A reviewing court should credit the rejected evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Under the guidance of these decisions, I recommend remanding this action for an award of benefits. As the Commissioner now concedes, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of the treating and examining physicians noted above. Moreover, there are no outstanding issues to be resolved before a determination of disability can be made, and the conclusion that plaintiff is disabled is supported by other evidence in the record, including the VA's determination that she is 100% disabled. If the opinions of the treating and examining physicians that the ALJ rejected are accepted, it is clear that a finding of disability is required.

4. Rejection of Evidence From Lay Witnesses

An ALJ who discounts the testimony of a lay witness must give reasons for doing so that are germane. E.g., Dodrill v. Shalala, 12 F.3d 915, 191 (9th Cir. 1993). When an ALJ fails to properly address competent lay witness testimony that is favorable to a claimant, a reviewing court cannot consider that error harmless unless no reasonable ALJ fully crediting

the testimony could have concluded that the claimant was disabled.  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1056 (9th Cir. 2006).

The Commissioner concedes that the ALJ did not adequately consider the testimony included in witness statements submitted by Tom Hill, James Pollock, Leslie Bagon, Robert Woodruff, and Doyle Kelley.  These witnesses described plaintiff's mental and physical condition in detail, and their descriptions supported plaintiff's assertion that she is unable to sustain substantial gainful employment.

The Commissioner now asserts that the ALJ's failure to properly consider lay witness statements does not require remand for an award of benefits because those statements do not show that plaintiff's condition met or equaled a listed impairment.  The Commissioner further asserts that the rule that improperly rejected testimony is to be "credited as true" is not mandatory, and provides rationale for rejecting the statements of lay witnesses which the ALJ did not provide.

These arguments fail.  The failure to adequately address the witness statements in question here was not harmless error because those statements fully support the conclusion that plaintiff cannot sustain substantial gainful employment.  The "crediting as true" rule is mandatory, see Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), and the Commissioner may not rely on grounds not set out in the agency's underlying decision.  See, e.g., Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947) (courts reviewing propriety of agency decision must consider only grounds for decision invoked by agency).

Because the ALJ did not provide an adequate basis for failing to credit the statements of several lay witnesses, those statements must be credited as true.  Because those statements

fully support the conclusion that plaintiff is disabled, they provide further support for the conclusion that this action should be remanded for an award of benefits.

## CONCLUSION

For the reasons set out above, the Commissioner's motion for remand (# 17) should be DENIED, and a judgment should be entered remanding this action to the agency for an award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due September 22, 2008.  If no objections are filed, review of  the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 3rd day of  September, 2008.


/s/   John Jelderks                                
John Jelderks
U.S. Magistrate Judge